IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
TRENTON DIVISION

| | | |
|---|---|---|
| AMALGAMATED BANK, MATADORS COMMMUNITY CREDIT UNION, GECU, MIDFLORIDA FEDERAL CREDIT UNION, and FARMERS STATE BANK, on behalf of themselves and all others similarly situated, | : : : : : : : | Civil Action No. _____ |
| | : | |
| Plaintiffs, | : : | CLASS ACTION |
| vs. | : : : | |
| HEARTLAND PAYMENT SYSTEMS, INC., | : : : | JURY TRIAL DEMANDED |
| Defendant. | : : | |
| | : | |

## COMPLAINT

Plaintiffs Amalgamated Bank, Matadors Community Credit Union, GECU,

MIDFLORIDA Federal Credit Union, and Farmers State Bank (collectively,

"Plaintiffs"), on behalf of themselves and all others similarly situated, by and

through the undersigned attorneys, allege as follows:

## INTRODUCTION

1.    This is a class action lawsuit brought on behalf of Plaintiffs,

individually, and on behalf of similarly situated debit and credit card issuers that

have been injured as a result of the recent data breach at Heartland Payment

Systems, Inc. ("Heartland" or "Defendant").  Defendant Heartland processes credit

card transactions and provides other services for over 250,000 businesses across the

United States, including restaurants and retail stores.  Heartland handles

approximately 100 million credit card transactions per month.   In connection with

its operations, Heartland comes into the possession of – and is entrusted with – the

confidential financial information of millions of consumers from across the country.

2.     Sometime in 2008, unknown and unauthorized third persons hacked

into Heartland's computer network and gained access to the Sensitive Financial

Information of an undetermined number of consumers.  The breach compromised

the credit and/or debit card number(s), expiration date(s), internal bank codes,

personal identifying information and/or other confidential financial information (the

"Sensitive Financial Information") of numerous consumers.

3.     The Sensitive Financial Information that was compromised by the

breach includes data contained on debit and credit cards issued by Plaintiffs and

similarly situated banks, credit unions, financial institutions and other entities to

their customers. As a direct and proximate result of the breach, these Plaintiffs and

similarly situated entities have been forced to re-issue new credit and debit cards to

their customers.  Given the large size of the data breach at Heartland, the expenses

associated with doing so are substantial, and include, *inter alia*, costs for

purchasing new plastic debit and credit cards, postage and other mailing expenses,

time spent by employees addressing this issue, and harm to reputation and

goodwill.  Further, there have been several reported incidents of fraud and misuse

of the Sensitive Financial Information of consumers that was compromised in the

data breach. Plaintiffs and many members of the Class have incurred un-reimbursed costs associated with this fraudulent activity.

4.    Plaintiffs, on behalf of themselves and the Class, bring this lawsuit for the purpose of recovering, *inter alia*, (i) the out-of-pocket expenses associated with notifying their customers of the Heartland data breach, (ii) the costs associated with re-issuing debit and credit cards that were compromised in the Heartland data breach, and (iii) all losses incurred from the unauthorized use of the Sensitive Financial Information that was compromised in the Heartland data breach.

5.    Defendant Heartland's actions constitute violations of the consumer protection statute of New Jersey, and amount to a breach of implied contract, breach of contracts to which Plaintiffs and Class members are intended third party beneficiaries, negligence *per se*, negligent misrepresentation, and common law negligence.

## PARTIES

6.    Defendant Heartland is a Delaware corporation with a principal place of business located at 90 Nassau Street, Princeton, New Jersey 08542.

7.    Plaintiff Amalgamated Bank is a bank with a principal place of business at 275 7th Avenue, New York, NY 10001. As discussed below, information associated with debit cards that Plaintiff Amalgamated Bank issued to consumers has been compromised as a result of the Heartland data breach.

8.    Plaintiff Matadors Community Credit Union is a full-service financial institution with a principal place of business at 20045 Prairie Street in Chatsworth,

California 91311.  As discussed below, information associated with debit and credit cards that Plaintiff Matadors Community Credit Union issued to consumers has been compromised as a result of the Heartland data breach.

9.      Plaintiff GECU is a Texas chartered credit union that is headquartered in El Paso, Texas.  As discussed below, information associated with debit and credit cards that Plaintiff GECU issued to consumers has been compromised as a result of the Heartland data breach.

10.     MIDFLORIDA Federal Credit Union is a credit union that is headquartered in Florida.  As discussed below, information associated with debit and credit cards that Plaintiff MIDFLORIDA Federal Credit Union issued to consumers has been compromised as a result of the Heartland data breach.

11.     Farmers State Bank is a bank that is headquartered in Marcus, Iowa. As discussed below, information associated with debit cards that Plaintiff Farmers State Bank issued to consumers has been compromised as a result of the Heartland data breach.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than the Defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

13.    This Court has personal jurisdiction over Defendant Heartland because it owns and operates a business that is located within this state, and conducts substantial business throughout the United States.

14.    Venue properly lies in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the acts giving rise to Plaintiffs' claims occurred in this district, and because Defendant is headquartered and conducts substantial business in this judicial district.

## FACTUAL BACKGROUND

**A.    Hartland's Payment Systems and Other Services.**

15.    Heartland describes itself as "one of the nation's largest payment processors delivering credit/debit/prepaid card processing, payroll, check management and payments solutions."   Since its founding in 1997, Heartland has grown to service 250,000 business locations nationwide with net sales of $1.3 billion in 2007.  Securities of Heartland are publicly traded on the New York Stock Exchange under the ticker "HPY."

16.    Heartland provides payment processing services related to bank card and credit card transactions for merchants throughout the United States and some parts of Canada.  In addition, Heartland provides certain other merchant services, including check processing, the sale and rental of terminal equipment, and the sale of terminal supplies.  Heartland and its affiliates and subsidiaries also provide payroll and related tax filing services, prepaid card and "stored-value card solutions," and campus payment solutions throughout the United States.  According

to the company's most recent Form 10-K filed with the Securities and Exchange Commission, substantially all of the Heartland's revenue is derived from processing and settling Visa and MasterCard bank card transactions for its merchant customers.

17.    On the website that it created in connection with its disclosure of the data breach,[1] Heartland claims to have a "proven track record of providing superior solutions to demanding markets such as pay-at-the-pump gas stations, parking lots, retail, restaurants, school campuses, hospitality businesses, and community banks. The company has also been effective in servicing auto repair facilities, convenience and liquor stores, and professional service providers."

18.    In connection with the functions that it performs on behalf of its merchant clients, Defendant Heartland is provided and entrusted with the confidential Sensitive Financial Information of hundreds of millions of people. Many of Heartland's clients, such as retail stores, restaurants, and other merchants, contract with Heartland to administer services concerning their consumer customers.

19.    Upon information and belief, Defendant has expressly or impliedly represented that it would take appropriate measures to safeguard the Sensitive Financial Information of Plaintiffs and Class members.  For example, Heartland's website related to the data breach claims that "Heartland is deeply committed to maintaining the security of cardholder data, and we will continue doing everything reasonably possible to achieve this objective."  Similarly, listed below Heartland's

---

[1] www.2008breach.com.

corporate logo are the phrases "The Highest Standards" and "The Most Trusted

Transactions." Further, upon information and belief, Heartland has expressly

agreed in contracts with third parties to take appropriate measures to safeguard

this sensitive information.

**B.    The 2008 Data Breach.**

20.    Beginning at some point (or points) at least as early as 2008,

Heartland's processing system was breached by a hacker.   It has been reported that

Heartland first learned that it "might have been hacked" in or around late October

of 2008.  According to its website, Heartland learned about the breach "[a]fter being

alerted by Visa® and MasterCard® of suspicious activity surrounding processed

card transactions..."

21.    Upon information and belief, it took Heartland several months to

confirm that its processing systems had indeed been breached after learning of this

"suspicious activity." In early January 2009, after Heartland enlisted the help of

"several forensic auditors to conduct a thorough investigation into the matter," it

was discovered that "malicious software that compromised [the] data... [had]

crossed Heartland's network."  This malicious software, which has the ability to

record payment card transaction data, was reportedly intercepting transaction data

as it was being sent to Heartland's in-house system for processing. A Heartland

spokesperson has described the "malware" planted by the hackers as containing

"extremely sophisticated code."

22.    Heartland first publicly disclosed the breach on January 20, 2009 –
amidst the flurry of media attention covering the Presidential Inauguration.  Robert
H.B. Baldwin, Jr., Heartland's president and chief financial officer, stated in a press
release that was issued on that day: "[w]e understand that this incident may be the
result of a widespread global cyber fraud operation, and we are cooperating closely
with the United States Secret Service and Department of Justice."

23.    Heartland has not been able to confirm that the breach has even been
resolved; its website states "[w]e *believe* the intrusion is contained." (emphasis
supplied).

C.    **Events Leading up to The Disclosure of The Breach.**

24.    It is clear that there are several steps that Heartland should and could
have taken that might have prevented this breach from occurring.  On its website
related to the breaches, Heartland states – now that its processing systems have
already been breached – that it is taking numerous measures to protect it going
forward:

> **What are we doing to further secure our systems?**
> Heartland immediately took a number of steps to further secure
> its systems. In addition, Heartland will implement a next-
> generation program designed to flag network anomalies in real-
> time and enable law enforcement to expeditiously apprehend
> cyber criminals. Heartland is deeply committed to maintaining
> the security of cardholder data, and we will continue doing
> everything reasonably possible to achieve this objective.

25.    Upon information and belief, beginning months ago Heartland sent
letters to different credit card issuers informing them of a data breach, and telling
them to cancel certain credit card accounts.  Upon information and belief, these

credit card issuers were expected to notify their customers – at their expense – of the data breach that occurred at Heartland.

**D.    The Aftermath of the Data Breach.**

26.    For what has been described as potentially the "largest data breach ever" – and which undisputedly includes very sensitive financial and banking information – Heartland has taken a caviler approach to the seriousness of this breach.  Indeed, Baldwin recently described the breach as follows in an article:

> "The nature of the [breach] is such that card-not-present transactions are actually quite difficult for the bad guys to do because one piece of information we know they did not get was an address," Baldwin said. As a result, he said, the prospect of thieves using the stolen data to rack up massive amounts of fraud at online merchants "is not impossible, but much less likely."

27.    It has been reported, however, that the information that was compromised in the Heartland data breach includes the digital information encoded into the magnetic stripe built into the backs of credit and debit cards and, in some cases, the name of the cardholder.  This information is extremely lucrative to identity thieves, who can use it to create counterfeit credit cards by imprinting this information onto fabricated cards.  Magnetic strips on the back of a credit or debit card often contain data like the primary account number, the user's name, a country code, an expiration date for the card and several characters of additional, discretionary data.

28.    Not only has Heartland kept its merchants, consumers, and credit card issuers in the dark publicly, but it also has not informed many of them in private.

Indeed, many of Heartland's merchant/clients are anxiously seeking additional information about the breaches from Heartland. According to one article, Henry Helgeson, president and co-CEO of Merchant Warehouse Inc. (a Boston-based provider of payment card processing services and software) stated shortly after the breach: "[w]e're dying for information on this one. Everybody who processes card information is dying to know how exactly this happened."

29.    Many states require entities like Heartland that are subject to a data breach of this type to notify affected consumers that their Sensitive Financial Information has been compromised. Upon information and belief, Heartland has not provided *any* individualized notice (other than its press release and website) to *any* consumers who were affected by the breach. Instead, it has shifted this legal obligation (and substantial expenses associated therewith) to Plaintiffs and Class members.

**E.    The Impact of the Heartland Data Breach on Plaintiffs and Class Members.**

       *i.    Amalgamated Bank.*

30.    Plaintiff Amalgamated Bank was notified that debit cards that it issued to consumers were compromised in the Heartland data breach. As a direct and proximate result of Defendant's conduct alleged herein, Plaintiff Amalgamated Bank has suffered injuries. Specifically, Plaintiff Amalgamated Bank reissued debit cards to consumers that were affected by the Heartland data breach.

31.    Plaintiff Amalgamated Bank has also incurred expenses caused by the misuse of Sensitive Financial Information that was compromised in Heartland's data breach.

### ii.    *Matadors Community Credit Union.*

32.    In or around January 8, 2009, Plaintiff Matadors Community Credit Union was notified in writing by CO·OP and Visa that credit cards and debit cards that Plaintiff issued to consumers were compromised in the Heartland data breach. Plaintiff Matadors Community Credit Union was provided with a list that specified the credit and debit card accounts which were compromised by the Heartland breach.

33.    As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff Matadors Community Credit Union has suffered injuries.  Specifically, Plaintiff Matadors Community Credit Union has re·issued a substantial number of credit and debit cards to its consumers that were affected by the Heartland data breach. In connection with each credit card that is re·issued, Plaintiff sends a letter to its customers informing them that their Sensitive Financial Information was compromised, and explaining the circumstances surrounding the data breach at Heartland.

34.    Plaintiff Matadors Community Credit Union has also incurred expenses caused by the actual misuse of Sensitive Financial Information that was compromised in Heartland's data breach.

### *iii.    GECU.*

35.    In early 2009, Plaintiff GECU was informed that a substantial number of the debit and credit cards that it issued to consumers were compromised in the Heartland data breach.

36.    As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff GECU has suffered injuries.  Specifically, Plaintiff GECU has re-issued credit cards to its consumers that were affected by the Heartland data breach.  In connection with each credit card that is re-issued, Plaintiff sends a letter to its customers informing them that their Sensitive Financial Information was compromised.  Plaintiff GECU has incurred substantial out-of-pocket expenses as a result of re-issuing these cards, and has received complaints from numerous members about the incident.

### *iv.    MIDFLORIDA Federal Credit Union.*

37.    On or around January 23, 2009, Plaintiff MIDFLORIDA Federal Credit Union was notified that debit and credit cards that it issued to consumers were compromised in the Heartland data breach.

38.    As a direct and proximate result of Defendant's conduct alleged herein, Plaintiff MIDFLORIDA Federal Credit Union has suffered injuries.  Specifically, Plaintiff MIDFLORIDA Federal Credit Union has re-issued a substantial number of debit and credit cards to its consumers that were affected by the Heartland data breach.

### v.    *Farmers State Bank.*

39.    On or around January 23, 2009, Plaintiff Farmers State Bank was informed by its processor that several of the debit cards that it issued to consumers were compromised in the Heartland data breach.

40.    As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff Farmers State Bank has suffered injuries.  Specifically, Plaintiff Farmers State Bank has re-issued the debit cards (and the PIN numbers associated with these cards) to these consumers that were affected by the Heartland data breach. In connection with each debit card that is re-issued, Plaintiff sends a letter to its customers informing them that their Sensitive Financial Information was compromised.

### vi.    *Members of the Class.*

41.    Similarly situated Class members have likewise suffered out-of-pocket damages and unreimbursed expenses due to Heartland's negligence and wrongful conduct.  It has been widely reported that other banks, credit unions, and card issuers are informing their customers of the data breach and re-issuing credit cards. Upon information and belief, many of these similarly situated entities have also incurred costs for misuse of the information.

42.    Instead of actively participating in resolving the problems that were caused as a result of its negligence and other misconduct, Heartland has essentially taken a backseat and shifted this burden to Plaintiffs and Class members.  Indeed,

the Question & Answer section on Heartland's website instructs consumers to notify

*the card issuer* of any suspected unauthorized transactions:

> **Will I be charged for any losses?**
> No. You are not responsible for any counterfeit fraudulent charges
> made by third parties that are reported in a timely way to the card
> issuer. Report any suspicious activity to your card issuer, and your
> claim will be investigated.

43.    As a direct and proximate cause of Heartland's misconduct as

described herein, Plaintiffs and Class members have suffered an ascertainable

injury.

## CLASS ACTION ALLEGATIONS

44.    This action is brought on behalf of Plaintiffs, individually and as a

class action, pursuant to FED. R. CIV. P. 23(a), (b)(2) and (b)(3) on behalf of all

banks, credit unions, financial institutions, and other entities that issue debit

and/or credit cards that were compromised in the data breach at Heartland (the

"Class"). The Class does not include Defendant, or it officers, directors, agents, or

employees.

45.    Upon information and belief, the Class consists of thousands of

members dispersed across the United States, the joinder of whom in one action is

impracticable.   Disposition of the claims in a class action will provide substantial

benefits to both the parties and the Court.

46.    The rights of each member of the Class were violated in a similar

fashion based upon Defendants' uniform actions.

47.    Questions of law and fact common to the Class predominate over questions which may affect individual Class members, and include the following:

    a.    whether Defendant was negligent in collecting and storing the Sensitive Financial Information of the customers of Plaintiffs and Class members;

    b.    whether Defendants owed a duty to Plaintiffs and Class members to protect the Sensitive Financial Information of the customers of Plaintiffs and Class members;

    c.    whether Defendant breached this duty to exercise reasonable care in storing this Sensitive Financial Information;

    d.    whether Defendant's conduct violates the New Jersey Consumer Fraud Act;

    e.    whether Plaintiffs and members of the Class are entitled to compensation, monetary damages, and/or any other services/corrective measure(s) from Heartland and, if so, the nature and amount of any such relief; and

    f.    whether statutory, punitive, and trebled damages are proper in this matter.

48.    Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have no interests that are antagonistic to or that irreconcilably conflicts with the interests of other members the Class.

49.    Plaintiffs have retained counsel competent and experienced in the prosecution of class action litigation.

50.    Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the Class, thereby making appropriate equitable relief with respect to Plaintiffs and the Class as a whole.

51.    A class action is superior to all other available methods for the fair and efficient adjudication of Plaintiffs' and Class members' claims. Plaintiffs and members of the Class have suffered irreparable harm (including damages to reputation and goodwill) as a result of Defendant's deceptive, negligent, and unlawful conduct. The damages suffered by individual Class member may be relatively small, and thus few, if any individual class members can afford to seek legal redress on an individual basis for the wrong complained of herein. Absent a class action, Plaintiffs and members of each of the Classes will continue to suffer losses as a result of Defendant's unlawful and negligent conduct, and will not be adequately protected and compensated therefore.

### FIRST CAUSE OF ACTION
### NEGLIGENCE

52.    Plaintiffs incorporate the allegations in the preceding paragraphs.

53.    Defendant, upon coming into possession of the private, non-public, and financial information of the customers of Plaintiffs and Class members, had a duty to exercise reasonable care in safeguarding and protecting such information from being compromised and/or stolen. This duty arises from the common law, as well as from those duties expressly imposed upon Defendant from sources such as contracts

between Defendant and Class members, agreements between Defendant and other third parties, and industry standards (such as Payment Card Industry Data Security Standard, a set of security controls mandated by the major credit card companies).

54.    Defendant also had a duty to timely disclose the fact that the customers of Plaintiffs and the Class, non-public financial information within its possession had been, or was reasonably believed to have been, compromised. Instead, it has shifted this obligation to provide direct, individualized notice of the breach to affected consumers to Plaintiffs and Class members.

55.    Defendant also had a duty to have procedures in place to detect and prevent dissemination of Plaintiffs' private information to third parties. This breach of security and unauthorized access was reasonably foreseeable to Heartland.

56.    Defendant, through its acts and/or omissions, unlawfully breached their duty to Plaintiffs and the Class by, *inter alia*, failing to exercise reasonable care in protecting and safeguarding the Sensitive Financial Information within its possession, and by failing to timely inform Plaintiffs and the Class that non-public financial information relating to their customers had been compromised.

57.    Defendant, through its actions and/or omissions, breached their duty to Plaintiffs and the Class by failing to have adequate procedures in place to detect and prevent dissemination of Plaintiffs' private information to third parties.

58.    But for Heartland's negligent and wrongful breach of its duties owed to Plaintiffs and the Class, the Sensitive Financial Information of consumers would

not have been compromised, and Plaintiffs and Class members would not have incurred costs associated with, *inter alia*, notifying their customers and card holders of the breach at Heartland.

59.    The injuries suffered by Plaintiffs and Class members were a reasonably foreseeable consequence of Heartland's negligence.

**SECOND CAUSE OF ACTION**
**BREACH OF CONTRACTS TO WHICH PLAINTIFF**
**AND CLASS MEMBERS WERE THIRD PARTY BENEFICIARIES**

60.    Plaintiffs incorporate the allegations in the preceding paragraphs.

61.    Upon information and belief, Plaintiffs and Class members are intended third party beneficiaries of contracts entered into between Defendant and third parties, such as its customer merchants, and between Defendant and operators of credit card payment systems (such as Visa and MasterCard).  Upon information and belief, Visa and MasterCard issue operating regulations and/or bylaws, which set forth the minimum standards that credit card transaction processors such as Heartland must meet.

62.    Upon information and belief, these contracts between Heartland and third parties require, *inter alia*, that Heartland takes appropriate steps to safeguard the Sensitive Financial Information of the customers of Plaintiffs and the Class.

63.    Upon information and belief, Heartland has saved (or avoided spending) a substantial sum of money by not complying with its contractual

obligations. Instead, many of these costs have been incurred by Plaintiffs and Class members.

64.    Defendant breached these agreements by, *inter alia*, failing to adequately safeguard this Sensitive Financial Information. This has directly caused injuries to Plaintiffs and the Class.

**THIRD CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**

65.    Plaintiffs incorporate the allegations in the preceding paragraphs.

66.    The customers of Plaintiffs and Class members were required to provide Heartland with their Sensitive Financial Information in order for Heartland to provide its services on their behalf. Implicit in this transaction was a covenant for Heartland to, *inter alia*, take reasonable efforts to safeguard this information, and to take appropriate measures to promptly notify consumers in the event that this information was compromised. Indeed, Heartland recognizes these obligations, as it states on its website that the company is "deeply committed to maintaining the security of cardholder data, and we will continue doing everything reasonably possible to achieve this objective." This covenant also ran to Plaintiffs and Class members.

67.    This implied contract required Defendants to not disclose the private, nonpublic Sensitive Financial Information of the customers of Plaintiffs and Class members, and to safeguard and protect the information from being compromised and/or stolen.

68.    Defendant did not safeguard and protect this private, nonpublic, and financial information from being compromised and/or stolen. To the contrary, Heartland allowed this information to be disclosed to an unauthorized third party or parties.

69.    Because Heartland disclosed this Sensitive Financial Information, did not inform the customers of Plaintiffs and Class members of the breach in a timely manner, and failed to safeguard and protect this information from being compromised and/or stolen (as it implied it would through its representations about the level of security it would provide), Heartland breached its implied contract with Plaintiffs and the Class.

70.    Plaintiffs and the Class have and/or can be expected to incur actual damages as a result.

**FOURTH CAUSE OF ACTION**
**Violations of the New Jersey Consumer**
**Fraud Act ("NJCFA") (N.J.S.A. § 56:8-1 *et seq.*)**

71.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

72.    The NJCFA provides a private right of action on behalf of "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act..." N.J. Stat. § 56:8-19

73.    For purposes of the NJCFA, a "person" is defined to mean "any natural person or his legal representative, partnership, corporation, company, trust,

business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestuis que trustent thereof." N.J. Stat. § 56:8-1(d).

74.    Plaintiffs and members of the Class are "persons" within the meaning of the NJCFA.

75.    Plaintiffs and members of the Class are consumers in the marketplace for, *inter alia*, the processing of credit card transactions, and have been injured in this capacity.

76.    In the alternative, Plaintiffs and members of the Class are commercial competitors of Heartland.

77.    At all relevant times material hereto, Heartland conducted trade and commerce in New Jersey and elsewhere within the meaning of the NJCFA.

78.    Plaintiffs and Class members have suffered an ascertainable loss of monies as a result of Heartland's violation of the NJCFA.

79.    The NJCFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

80.    Heartland has engaged in deceptive acts and practices in violation of the NJCFA by *inter alia,* making materially false and misleading statements and omissions concerning the measures it was taking to safeguard this Sensitive Financial Information.

81.    Heartland has further violated the NJCFA by failing to fully comply,

in bad faith, with its legal and other obligations associated with the data breach (and instead shifting this burden to Plaintiffs and Class members).

82.    The foregoing acts, misrepresentations, omissions and unconscionable commercial practices caused Plaintiffs and other members of the Class to suffer an ascertainable loss and incur other damages.

## FIFTH CAUSE OF ACTION
## NEGLIGENCE *PER SE*

83.    Plaintiffs incorporate the allegations in the preceding paragraphs.

84.    Heartland is and - during all relevant times - has been required to comply with the PCI standards, which required it to have, *inter alia*, adequate controls in place for preventing, detecting and responding to system intrusions.

85.    These regulations and industry security standards establish the minimal duty of care owed by the Defendant to the named Plaintiffs and Plaintiff Class.

86.    Defendant failed to meet that minimum duty.

87.    Heartland's violations of these regulations and industry security standards caused injury to Plaintiffs and Class members.

88.    The injuries suffered by Plaintiff and Class members were of the type intended to be prevented by these regulations and industry security standards.

89.    Plaintiffs and Class members were members of the class of persons intended to be protected by these regulations and industry security standards.

90.    Defendant's negligence *per se* is a proximate cause of the injuries inuring to Plaintiffs and the Class.

## SIXTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

91.    Plaintiffs incorporate the allegations in the preceding paragraphs.

92.    Defendant negligently made false communications of material fact concerning its security systems and the measures it was taking to protect the Sensitive Financial Information that was compromised.

93.    Plaintiffs and Class members justifiably relied upon these misrepresentations.

94.    This reliance by Plaintiffs and Class members resulted in an ascertainable loss or injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of themselves and all others similarly situated, respectfully request that this Court enter an Order:

(a)    certifying this matter as a class action, appointing Plaintiffs as Class representatives and designating Plaintiffs' counsel as class counsel;

(b)    granting an award against Defendant for actual, statutory, punitive, and/or compensatory damages, as provided by the New Jersey Consumer Fraud Act, and the common law and contractual claims asserted herein;

(c)    granting an award against Defendant for actual, punitive and/or compensatory damages, as provided by the New Jersey Consumer Fraud Act, and enjoining Defendant from continuing their unfair and/or deceptive conduct;

(d)    finding that Defendant was negligent in protecting Plaintiff's and the Class' Sensitive Financial Information, and that this conduct caused foreseeable injuries to Plaintiff and Class members;

(e)    finding the Defendant was negligent *per se* by violating various statutes, regulations and industry standards, and finding that this conduct was the proximate cause of foreseeable injury to Plaintiffs and Class members;

(f)    finding that Defendant breached its duty to safeguard and protect Plaintiffs' and the Class' Sensitive Financial Information, breached implied contracts with Plaintiff and class members, and breached contracts to which Plaintiff and class members were intended third party beneficiaries, and awarding appropriate damages;

(g)    awarding damages (including punitive damages and treble damages) to Plaintiffs and the Class, as well as reasonable attorneys' fees and costs of litigation; and

(h)    providing for such other legal and/or equitable relief as justice requires, including an injunction or other equitable relief that requires Heartland to comply with applicable security standards.

<u>JURY DEMAND</u>

Plaintiffs on behalf of themselves and the putative class, demand a trial by jury on all issues so triable.

Dated:  February 20, 2009

Respectfully submitted,


By:   *//s// John E. Keefe Jr.*
John E. Keefe Jr.
KEEFE BARTELS CLARK
170 Monmouth Street
Red Bank, NJ 07701
tel: 732-224-9400
fax: 732-224-9494

Joseph G. Sauder
Matthew D. Schelkopf
Benjamin F. Johns
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633

Christopher G. Hayes
LAW OFFICE OF
    CHRISTOPHER G. HAYES
225 South Church Street
West Chester, PA 19382
Telephone: (610)-431-9505
Facsimile: (610)-431-1269

Arnold Levin
Daniel C. Levin
LEVIN, FISHBEIN, SEDRAN
& BERMAN
510 Walnut Street, Ste. 500
Philadelphia, PA 19106
Telephone: 215-592-1500
Telecopier: 215-592-4663

*Attorneys for Plaintiffs and the
Proposed Class*